MITTEN BANK SECURITIES CORPORATION v. HUBER.

SAME v. JORDEN.

Nos. 5395, 5396.

Circuit Court of Appeals, Third Circuit.

Nov. 8, 1934.

For prior opinions, see 74 F. (2d) 297, 298.

George H. Huft, of Philadelphia, Pa., for appellant.

Cecil P. Harvey, Martin Feldman, William Horenstein, and S. Davis Wilson, all of Philadelphia, Pa., for appellees.

Before DAVIS, Circuit Judge, and JOHNSON and FORMAN, District Judges.

JOHNSON, District Judge.

The plaintiffs in this case, Huber and Jorden, sued the Mitten Bank for an alleged breach to repurchase stock which they had purchased on the following representations: "Until MBSC is listed on the stock exchange, or until further notice, a market for the purchase and sale of MBSC is maintained at Mitten Bank, Broad and Locust Streets, and at all other Mitten Bank locations. Should you be forced to sell, you will receive $25 per share, par value. There is a charge of 25¢ per share to cover the cost of this service."

The stock was listed on the Philadelphia stock exchange on December 9, 1929. Prior to that date both plaintiffs, who had purchased their stock on the strength of the de-

fendant's representation that if they had to sell their stock they would receive $25 per share less 25 cents per share to cover the cost of service, tendered their stock to the defendant and made demand for their money, $24.75 per share. The defendant refused to carry out the above agreement. Thereafter the plaintiffs brought suit and at the trial secured verdicts on which judgments were entered. On appeal these judgments were affirmed.

Petition for rehearing has been filed on the single ground that neither the District Court nor this court ruled on the measure of damages. In its petition for rehearing the defendant says:

"The applicable rule of law is stated in 14 C. J. p. 715, as follows:

" 'The general rule as to the measure of damages, where the buyer repudiates the contract and refuses to receive and accept the stock, is the difference between the contract price and the market value of the stock at the time and place of delivery, and where the seller, after the stock has been tendered and refused, assumes to be the owner thereof, he can recover only such difference; but the fact that the seller afterward recoups himself by making advantageous sales of the stock does not lessen or alter the liability of the purchaser. Where, however, the sale is not one of a general character, but is a sale by which the seller is to be paid a specified sum for specific stock, a transfer of which he tenders to the buyer, the measure of damages for the buyer's refusal to take such stock is the contract price, and not the difference between such price and the value of the stock at the time of the alleged breach of contract.' "

Petitioners say that "it is obvious that the defendant's undertaking was not to repurchase any specific shares or certificates of stock but merely to maintain a stock market for any stock which might be tendered."

It seems to us that whether they agreed to repurchase or to maintain a market for any stock which might be tendered is immaterial, for in either case the defendant represented that the seller "will receive $25.00 per share, par value," less 25 cents per share to cover the cost of service. The defendant was duty bound either to repurchase the stock or to see that it was resold for the dissatisfied owner at the stipulated amount per share. It did neither.

As to the measure of damages it seems to us that in the agreement between plaintiffs and defendant, the defendant undertook to guarantee that the seller would receive $25, less 25 cents per share for the stock.

The measure of damages for the refusal was the contract price which the defendant agreed that the seller should receive and the judgments entered represented this amount plus interest. This agreement comes under the second part of the rule stated above upon which the defendant relies. It was on the basis of this agreement that the judgments were entered below, and the rehearing is accordingly denied.